**DINSMORE v. GARRIOT, et ux.**

Circuit Court, Lake County.

August 26, 1953.

Zera D. Giles, Leesburg, for plaintiff.

Matt O'Brien of Macfarlane, Ferguson, Allison & Kelly, Tampa, for defendants.

T. G. FUTCH, Circuit Judge.

The plaintiff J. R. Dinsmore filed a bill of complaint to foreclose a mortgage on certain real and personal property in Lake County, known far and wide as "Eagle's Nest Fish Camp," and owned by the defendants.

The property is subject to a prior mortgage, held by a third party. It is dated July 6, 1950 and by the terms of the note is for $15,000, which it secured—and became due on January 6, 1951.

Plaintiff purchased the note and mortgage on December 6, 1951, long after maturity, from the original mortgagee. The original mortgagee had notified defendants that he wanted his money. He had not demanded payment.

The note is not a negotiable instrument, and when acquired by plaintiff after its maturity, and at the request and procurement of defendants, it became an obligation payable on demand—and no demand has ever been made, either by plaintiff or his attorneys.

Upon being advised by the original mortgagee that he needed his money, defendants contacted plaintiff, who was then living in Indiana. The plaintiff came to Florida and to defendants' camp on Lake Griffin in December 1951, and on December third or sixth purchased the mortgage with the note, secured thereby.

The assignment is dated December 3, 1951 but the endorsement which appears on the note recites interest paid to December 6, 1951. Credits on the back of the note indicate that the principal had been reduced from $15,000 to $14,000 at the time of the transfer to the plaintiff.

At the time of the purchase of the note and mortgage by plaintiff and as a part of the same transaction defendants made, executed and delivered to plaintiff an option to purchase an undivided half interest in the camp, including land, houses, boats, kickers and all property both real and personal forming a part of and used in connection with the business of furnishing living accommodations, boats and other fishing supplies to patrons of the camp (the contract actually read as an agreement to sell the plaintiff the whole interest, but by agreement of the parties it is shown that only an undivided half interest was contemplated).

Immediately after the transfer of the mortgage and note and the delivery of the option to purchase, plaintiff returned to Indiana, and came back to the property in March 1952. There he and his wife made their home until some time after the institution of this suit. He paid no rent, and nothing was paid for the use of electricity and water. He and his wife worked some on the property, and received some money for their work. Their main effort seems to have been to acquaint themselves with the property and business —preparatory to perfecting a partnership by the purchase of the undivided half interest. There is no evidence of any friction between the parties.

The assignment of the mortgage to the plaintiff, while dated December 3, 1951, was not filed for record until February 26, 1953. The option to purchase was filed for record on July 8, 1953.

The option provided that plaintiff had until 30 days after the payment and satisfaction of the first or purchase money mortgage in which to exercise his option to purchase—he was, however, at liberty to exercise his option at any time. It also provided that he could apply the unpaid principal due him on the note and mortgage purchased and held by him on the purchase price.

The option further provided that defendants would "upon written request therefor" deliver abstract of title to the property.

On or about April 30, 1953 plaintiff requested abstract of title to the property as provided for in the option—*and made direct reference to the option agreement in his letter of request for the abstract of title.*

On May 5, 1953 defendants delivered the abstract as requested. Several weeks later they received a letter from plaintiff's attorneys dated May 29, 1953 advising that the mortgage and notes had been placed in their hands for collection—*and making formal demand for payment of the $1,000 note.* This $1,000 note had not been owned by the former mortgagee but was made to evidence the loan of an *additional* sum in that amount by the plaintiff at the time and as a part of the same transaction by which he had purchased the original note and mortgage and received the option to purchase. By its terms it was secured by the same mortgage. Demand for payment of this note had previously been made by plaintiff and following such demand payment had been tendered by defendants —and refused by plaintiff.

During all this time plaintiff and his wife continued to live on the premises involved—*and made no mention of foreclosure.*

Upon receiving the aforesaid letter from plaintiff's attorneys, defendants requested the return of the abstract so they could arrange finances to comply with plaintiff's demands.

The bill of complaint was filed June 15, 1953 and service of process was made on defendants June 16, 1953. The abstract was finally returned to defendants on June 17, 1953.

Plaintiff continued to live on the premises until July 13, 1953, when he finally moved off the property, because, as he said, "it appeared that" he was not wanted there (shades of the drunk, who after being thrown from the dance hall four times, observed that it was plain he was not wanted there, and he would leave).

If ever there was an instance of the mortgagor being lulled into a false sense of security, surely this is it. Joe Stalin himself could not have done a better job.

The defendants should not, in equity and good conscience be burdened with paying plaintiff's attorneys in this case.

There was a tractor bought by the parties in connection with the transaction after plaintiff returned to Florida and took up his residence on the property, and which he took with him when he finally decided he was not wanted or welcome on the premises. Defendants have paid $1,321.82 of the purchase price of the tractor.

Defendants have paid $700 interest on the mortgage. There is no evidence from which the court can determine the wages earned by plaintiff or paid to him by defendants—neither is there any evidence of the value of rental, water and electricity due defendants by plaintiff. I can only assume that the money paid as wages plus

rent and water and electricity equal the value of the work done by plaintiff.

Plaintiff produced in evidence a sheet of paper on which was written certain amounts of money which he claimed he had received from defendants and claimed that to be all that he had received. On inquiry by the court, plaintiff testified that these items had been set down and recorded on this sheet of paper as received by him. That this is not true is evidenced by the fact that the word "March" on the third line is marked out, and the abbreviation "Dec." is substituted—the whole sheet on its face shows that it was made at one time and not at different times or from time to time or month to month as testified to by plaintiff.

There are due from the defendants to the plaintiff the following sums—

| | | |
|---|---|---|
| Principal | $15,000.00 | |
| Interest to August 31, 1953 | 1,473.67 | |
| Total | $16,473.67 | $16,473.67 |

and defendants are due the following credits:

| | | |
|---|---|---|
| Interest paid | $ 700.00 | |
| Paid on tractor | 1,321.82 | |
| Total | $ 2,021.82 | 2,021.82 |
| *Balance due to plaintiff* | | $14,451.85 |

A reasonable fee to be paid by plaintiff to his attorney is $1,763.75 —but this is not the liability or obligation of the defendants.

There is a contingent liability of the defendants for the benefit of the plaintiff on account of the tractor in the minimum sum of $578.75, which is a fixed obligation and liability of the plaintiff.

Final decree will be entered to foreclose the mortgage and fixing the amount due from defendants to plaintiff at the sum of $14,-451.85 as of August 31, 1953, and providing for sale of the property described in the mortgage and the application of the proceeds of such sale to the payment of said sum of $14,451.85, together with interest at the rate of 6% per annum from September 1, 1953 should said sums not be paid within the time allowed by law.

Costs of these proceedings will be taxed against the plaintiff and any costs expended by defendants in this cause will, when approved by the court, be deducted from the amount found to be due

to the plaintiff in the event of payment by the defendants before sale or from the amount paid plaintiff from proceeds of sale.

Payment may be made by certified check or cashier's check and defendants shall not be held to tender actual cash to plaintiff for payment.

The decree will provide for the reformation of the option to purchase as prayed for in defendants' counterclaim.

The decree will provide for defendants transferring to plaintiff any possible claim or interest they might have in the tractor and its equipment.